IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DALE ROWE,

                    Plaintiff,

           v.                                                    OPINION and ORDER

KILOLO KIJAKAZI,                                                 21-cv-649-jdp
Acting Commissioner of the Social Security
Administration,

                    Defendant.

---

Plaintiff Dale Rowe sought disability benefits alleging an onset date of July 2016, but he was awarded benefits only from April 2021, when he qualified for benefits by virtue of his age. He seeks judicial review of the decision by the Commissioner of the Social Security Administration that Rowe was not disabled from July 2016 on.

Rowe contends that the ALJ's conclusion that Rowe could then perform a limited range of light work was not supported by substantial evidence because the ALJ: (1) failed to obtain an updated medical opinion; (2) misconstrued the medical record in dismissing the opinion of Rowe's treating physician; and (3) failed to cite accurate and logical reasons for discounting Rowe's subjective allegations about his symptoms. Rowe's arguments might have been enough to persuade a different ALJ. But under the deferential standard of review that applies here, the court must affirm the commissioner's decision because it is based on a reasoned evaluation of the evidence.

BACKGROUND

**A. Administrative proceedings**

Rowe has a history of lumbar surgery in 2008 and 2009, resulting in an L4-L5 fusion. In July 2015, Rowe fell off a beer tank and hurt his left shoulder, necessitating left shoulder arthroscopic rotator cuff tendon repair. In July 2016, he tripped over some bricks and exacerbated pain in his neck and back. He has not worked since.

Rowe applied for disability insurance benefits and supplemental security income on October 27, 2016. He alleged that he had been disabled since July 5, 2016, from shoulder, back, and knee impairments, osteoarthritis, fibromyalgia, and a host of mental impairments. The local disability agency denied his application. Rowe appealed; an administrative law judge found him not disabled.  He then filed a first suit in this court. *Rowe v. Saul*, 19-cv-898-jdp. The court granted a joint motion by the parties to remand the case to the commissioner for further proceedings. Dkt. 23 in the '898 case.

After remand, a second hearing was held telephonically before the same ALJ, Bill Laskaris. ALJ Laskaris issued a partially favorable decision, finding Rowe disabled as of his 55th birthday on April 8, 2021, but not disabled before that date. In his decision, the ALJ followed the five-step sequential evaluation process set forth in the regulations. R. 1161. At step one, he concluded that Rowe hadn't engaged in substantial gainful activity since his alleged onset date. At step two, he found that Rowe had a number of severe physical impairments, namely, degenerative disc disease with post-laminectomy syndrome; degenerative joint disease in both shoulders; and fibromyalgia. (He also found that Rowe had a number of mental impairments that are not at issue in this appeal.) But at step three, the ALJ found that Rowe's impairments

were not severe enough on their own or in combination to meet the severity requirements of a listed impairment. R. 597.

The ALJ found that Rowe had the residual functional capacity to do light work with limitations on stooping, crouching, kneeling, crawling, and climbing ladders, ropes, scaffolds, ramps and stairs. Rowe could occasionally reach overhead bilaterally and frequently reach in all other directions bilaterally, and had to avoid exposure to extreme cold. R. 1145. In reaching these conclusions, the ALJ acknowledged that Rowe had testified or completed function reports indicating greater limitations, including an inability to sit, walk or stand for more than 30 minutes at a time or more than two hours each daily. R. 1146. But the ALJ did not find support in Rowe's treatment records for such severe limitations. The ALJ cited a number of reports in which Rowe stated that his pain was well-controlled, as well as one statement by a treating provider noting that Rowe had a history of pain greatly out of proportion to his physical findings. R. 1147. The ALJ also found the severity of Rowe's allegations inconsistent with the following:  diagnostic imaging, including an April 23, 2018, lumbar spine MRI that Rowe's doctor described as showing no severe findings; physical examinations, which documented some episodic abnormal findings such as tenderness to palpation and some reduced range of motion in the lumbar spine, but also regularly found that Rowe had full motor strength and sensation in his lower extremities and full range of motion in the shoulder, cervical spine, and extremities; and Rowe's "consistent but conservative" treatment history, which consisted of medication management, injections, and physical therapy. R. 1148.

Assessing the medical opinions, the ALJ gave "good weight" to the opinions of the state agency physicians who reviewed Rowe's claim at the initial and reconsideration stages, both of whom found Rowe capable of light work with essentially the same limitations the ALJ found.

3

The ALJ acknowledged that the opinions were four years old and therefore he declined to give them great weight. But he found them to be generally consistent with the later-developed medical evidence, which documented only mild physical findings that had remained largely stable, as well as Rowe's continued conservative course of treatment. R. 1151. On the other hand, the ALJ assigned only "some weight" to the opinion of Rowe's treating physician, Dr. Faull, who concluded that Rowe had disabling limitations. R. 1153. The ALJ acknowledged that Faull was a treating provider, but he found her opinion "not consistent with her own treatment notes, or the observations from the claimant's other providers and consultative examinations," which documented "only mildly reduced range of motion and strength in the claimant's back and extremities" and only conservative treatment. R. 1153.

At step four of the sequential evaluation, the ALJ found that Rowe's limitations prevented him from performing his past relevant work. At step five, relying on the testimony of a vocational expert, the ALJ found that there was a significant number of other jobs in the national economy that Rowe could perform, namely housekeeping cleaner, assembler, and sorter. R. 1154. The ALJ concluded that after April 9, 2021, when Rowe's age category changed to an individual of advanced age, Rowe was disabled, as directed by Medical-Vocational Rule 202.06. R. 1155.

ANALYSIS

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

All of Rowe's challenges are focused on the ALJ's residual functional capacity assessment for the time before April 9, 2021. Rowe contends that the ALJ erred by: (1) failing to obtain an updated medical opinion to address the medical evidence added to the record after the last state agency review in June 2017; (2) rejecting Dr. Faull's opinion; and (3) rejecting Rowe's subjective complaints.

**A. New Evidence**

As is often the case, Rowe continued to receive medical care after the last state agency review in June 2017 up to the date of the hearing. But this fact alone does not mean that the ALJ was required to ask the state agency physicians to update their opinions, for "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)). Only when the new evidence is "potentially decisive" does the ALJ err by failing to seek an additional medical opinion. *Kemplen v. Saul*, 844 F. App'x 883, 888 (7th Cir. 2021), as amended on reh'g in part (June 21, 2021).

Here, Rowe points to three pieces of evidence that he says undermined the findings of the state agency physicians, who found him capable of performing a limited range light work: (1) an updated MRI from 2018 showing probable contact with nerve roots at L3 and L5 and possible contact at L4, along with thickening of the left L5 possibly related to chronic neuritis or inflammation of the nerve, R. 1062–63; (2) medical records showing that Rowe received additional trigger point injections, as well as medical branch blocks and epidural steroid

injections; and (3) records showing that Rowe had conversations with providers concerning the possibility of a spinal cord stimulator, neurostimulator or a pain pump, which Rowe says supports his claim that his medications and treatments were not as effective as the state agency reviewers apparently believed.

The most significant evidence is the 2018 MRI. As Rowe points out, this MRI showed nerve root contact, which was not present on the August 2016 MRI reviewed by the state agency physicians. But as the commissioner persuasively reasoned, the 2018 MRI was new in that it came after the state agency physicians' opinions, but the MRI had been specifically considered and discussed by Jaymin Shah, D.O., Rowe's treating pain management specialist. As the ALJ noted, Dr. Shah reviewed the findings at an appointment with Rowe on June 4, 2018, where he "reassure[d]" Rowe that "even though there are some changes there that there are no severe findings[.]" R. 1147 (citing R. 1075). At an appointment with Rowe in September 2018, Dr. Shah reiterated that the MRI findings were "relatively minor." R. 1403. Thus, unlike in *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018), and *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), the ALJ didn't attempt to interpret the 2018 MRI on his own; rather, he relied on a medical interpretation of the MRI offered by one of Rowe's own doctors. It was plain from Dr. Shah's interpretation that the "minor" findings on the MRI would have been unlikely to have made any difference to the state agency doctors' opinions.

As Rowe correctly points out, Dr. Shah suspected that the disc bulge at L5-S1 was likely a "symptomatic finding," R. 1403, and a radiologist asserted that the degenerative changes in Rowe's spine would "correlate for level of patient's pain." R. 1063. But nevertheless, Dr. Shah described the 2018 findings as "minor." What is more, he did not recommend any changes in Rowe's treatment regimen, but instead recommended that Rowe manage his symptoms with

6

physical therapy and over-the-counter medications. In light of Dr. Shah's recommendation and the treatment Rowe received, the ALJ properly concluded that Rowe's back condition remained relatively stable after the last state agency review. The ALJ did not err in declining to remand the case for an updated medical opinion to assess the 2018 MRI. *Cf. Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) (ALJ was entitled to rely state agency physicians' opinions where intervening test was reviewed by two doctors, neither of whom four it concerning or noted a significant impact on plaintiff's functional capacity).

Apart from the MRI, Rowe says the state agency physicians were not aware that he continued to receive epidural injections or that he raised the possibility of a spinal cord stimulator in conversations with his physicians. But the state agency physicians noted in their review of the medical evidence that Rowe had already received a number of trigger point injections, epidural steroid injections, facet injections and a medial branch block. R. 77, 113–14. The fact that Rowe continued to receive more of the same type of treatment is not likely to have changed their opinions. And as for the discussions of a pain pump or spinal cord stimulator, the record indicates that Rowe raised the possibility of those treatments with his providers, not the other way around. It is undisputed that no provider ever prescribed or recommended one of these options. So again, Rowe hasn't shown that this evidence was likely to have changed the opinions of the state agency physicians.

In sum, Rowe hasn't identified any new medical evidence that was reasonably likely to have changed the state agency physicians' opinions. Accordingly, the ALJ did not err in failing to obtain an updated medical opinion.

**B. Opinion of Michelle Faull, D.O.**

As noted, the ALJ declined to give much weight to the opinion of Dr. Faull, one of Rowe's treating physicians, who concluded that Rowe had work-preclusive physical limitations. Rowe filed his claim before 2017, so, under the regulations applicable to Rowe's claim, Faull's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c). An ALJ "must offer good reasons" for giving a treating physician's opinion less than controlling weight. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). If the ALJ considers the proper factors, the court will uphold the decision to discount a treater's opinion "so long as the ALJ 'minimally articulate[d]' his reasons." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

The ALJ concluded that Dr. Faull's opinion was not entitled to much weight because it was inconsistent with Rowe's treatment records, which he found documented "consistent but conservative" treatment for Rowe's pain in the form of physical therapy, injections, and medications. R. 1153. The ALJ also referred to his earlier discussion of the relatively minor examination findings from Rowe's office visits, noting that they showed "only mildly reduced range of motion and strength in the claimant's back and extremities." R. 1153.

Rowe challenges both of these findings. First, he argues that the ALJ "misrepresented" the record in describing his treatment as "conservative." As Rowe sees it, his treatment was anything but: it included 10 trigger point injections, two facet joint injections, two epidural steroid injections, three medial branch blocks, multiple rounds of physical therapy, a back brace, a TENS unit, analgesic cream and narcotic medications. But the ALJ acknowledged this

8

history in his decision, and properly recognized that Rowe was "consistent" in his efforts to obtain pain relief. R. 1148, 1153. The issue, however, is not how *much* treatment Rowe received but rather the *kind* of treatment. The Seventh Circuit has agreed that injections can properly be characterized as conservative treatment. *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (plaintiff's treatment, consisting of injections, orthotics, and physical therapy, was conservative); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (relying on an Eighth Circuit case to conclude that epidural steroid injections "have been characterized as 'conservative treatment'"); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility finding based on "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session"); *Vrooman v. Comm'r of Soc. Sec.*, No. 19-CV-1452-SCD, 2020 WL 4815810 at *5 (E.D. Wis. Aug. 19, 2020) (finding reasonable ALJ's characterization of medication management and injection therapy as "routine" treatment), *aff'd Vrooman v. Kijakazi*, No. 20-2939, 2021 WL 3086196 (7th Cir. July 21, 2021). It is undisputed that no doctor thought Rowe's back or shoulder problems severe enough to warrant surgery, and although Rowe raised the possibility of a spinal cord stimulator or pain pump with his doctors, no doctor recommended that treatment. So, although reasonable people might disagree, it was not unreasonable for the ALJ to characterize Rowe's treatment in the form of injections, medications, and physical therapy as "conservative," and further to find that conservative treatment to be inconsistent with the severe limitations endorsed by Dr. Faull.

The same is true of the ALJ's assessment of the objective clinical findings. Rowe argues generally that the ALJ presented a slanted interpretation of the medical records that overemphasized so-called "normal" or "mild" findings and underemphasized records showing

abnormalities including abnormal posture, tenderness, trigger points and paraspinal muscle spasms. More specifically, he takes issue with the ALJ's finding that he had only "mildly" reduced range of motion in his lumbar spine, pointing to a number of records that he says documented that he was at least "moderately" limited in his lumbar range of motion. Plt.'s Br., Dkt. 15, at 13. In addition, he argues that the ALJ erred when he found that Rowe demonstrated abnormal gait on only six occasions, noting that the ALJ missed some records documenting an abnormal gait and relied on some records that made no mention of gait at all. *Id*. at 10.

The court agrees that the ALJ's review of the more than 1,000 pages of medical records was not perfect. Even so, the errors or omissions identified by Rowe were not significant enough to undermine the reasonableness of the ALJ's decision to give little weight to Dr. Faull's opinion. In particular, the ALJ acknowledged that Rowe's records documented abnormal examination findings. R. 1147 (citing records documenting Rowe's complaints of pain, trigger points around the shoulder blades, tenderness to palpation in the lumbar paraspinals, and spasms and observed reduced range of motion in the lumbar spine). At the same time, the ALJ accurately noted that Rowe regularly was noted to have 5/5 strength in his lower extremities with intact sensation, responded negatively to straight leg raise testing except on a few occasions in 2018, was found to have no lower back pain signs or symptoms after falling and hurting his shoulder in February 2021, was observed to have a normal gait on many occasions, was not prescribed a cane by any provider, and was regularly found to have full range of motion and strength in his shoulder, cervical spine, and extremities. Even crediting Rowe's argument that he was more limited in lumbar range of motion than the ALJ found and was observed to walk abnormally on some occasions missed by the ALJ, the evidentiary picture remains one

from which reasonable people could reach different conclusions about Rowe's ability to work. In this situation, this court must defer to the ALJ. *Bakke*, 62 F.4th at 1070 ("Where the ALJ clearly notes all evidence—that which supports his conclusion and that which undermines it— we cannot replace his judgment with ours.").

What is more, Rowe hasn't shown how some additional observations of an abnormal gait or slightly greater limitations on his lumbar range of motion undermines the ALJ's decision to give little weight to Dr. Faull's opinion or the ALJ's ultimate RFC assessment. Although Dr. Faull indicated that Rowe had reduced range of motion in his lumbar spine, she found that he nonetheless had the ability to bend and twist at the waist occasionally, R. 723, consistent with the ALJ's finding that Rowe could stoop occasionally. As for Rowe's alleged gait issues, when asked to identify "any positive objective signs of your patient's symptoms," Dr. Faull did not check the box marked "abnormal gait." R. 720. In fact, the only positive signs Dr. Faull identified were reduced range of motion, abnormal posture, tenderness, trigger points, and muscle spasm. *Id*. The ALJ reasonably concluded that these limited findings, along with the observations by Rowe's other providers and Rowe's conservative course of treatment, were not severe enough to support the extreme functional limitations offered by Dr. Faull.

In sum, Rowe has not demonstrated that the ALJ erred in rejecting Dr. Faull's opinions concerning Rowe's limitations.

## C. Rowe's Subjective Complaints

Finally, Rowe challenges the ALJ's refusal to fully credit his subjective allegations that his impairments prevent him from sitting, standing, or walking for any significant amount of time, such that he is incapable of working. Under the social security regulations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be

11

consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9. Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id*. "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)). Not all the ALJ's reasons for discounting a claimant's subjective complaints need survive scrutiny so long as some of them do. *McKinzey*, 641 F.3d at 890.

Here, the ALJ rejected Rowe's subjective allegations for largely the same reasons he rejected Dr. Faull's restrictive opinion: they were inconsistent with Rowe's conservative course of treatment and with the clinical findings demonstrating only mild to moderate functional limitations. He also pointed to some of Rowe's own statements in the treatment records that contradicted his allegations:  (1) his report to a provider that he had worked an eight-hour day before an examination on September 19, 2016; (2) his report on June 23, 2017 that he was walking twice daily up to two miles; (3) his denial of any low back symptoms at a March 2021 visit to the emergency room after a slip-and-fall accident; and (4) his reports at several office visits that his pain was well-controlled on medications, particularly during the time frame from September 2018 through October 2020. The ALJ also pointed out that in February 2017,

Rowe's treating physician noted that Rowe had a history of pain "greatly out of proportion to his physical findings" and that Dr. Shah specifically advised that Rowe's April 2018 MRI revealed no severe findings.

Once again, the ALJ's review of the evidence was not perfect. As Rowe points out, Rowe did not tell a provider on September 19, 2016, that he had worked an eight-hour day; that information had been carried forward in Rowe's medical record from a visit on July 6, 2016, Rowe's onset date, when he sought treatment after falling over a pile of bricks and hurting himself at work two days prior. R. 556. And it is true that simply because Rowe frequently told his providers that his pain was "well-controlled" on medications does not mean that he could perform light work on a full-time basis. But in relying on Rowe's statements to his providers, the ALJ did not suggest that Rowe's medication eliminated his symptoms, nor did he find those statements to be conclusive evidence that Rowe could work. Rather, it was just one reason among several why he found Rowe's allegations of disabling symptoms not entirely credible. Those other reasons, specifically Rowe's conservative course of treatment, the limited abnormal findings during medical examinations, the observation by a treating physician that Rowe's pain was "greatly out of proportion to his physical findings," Rowe's reported ability to walk two miles daily, and his denial of low back complaints during an emergency room visit in March 2021, all have substantial support in the record and provide ample support for the ALJ's credibility determination.

Accordingly, Rowe hasn't demonstrated that the ALJ erred when evaluating his subjective complaints.

**D. Conclusion**

The ALJ didn't err in rejecting Rowe's allegations of total disability or Dr. Faull's opinion that Rowe couldn't work, and he didn't need to obtain an updated medical opinion. He considered all the important evidence, weighed the appropriate factors, and built an accurate and logical bridge from the evidence to his conclusion. A different factfinder might have found from this same evidence that Rowe was disabled before April 9, 2021, but the evidence does not compel that conclusion. Under the deferential standard of review applicable here, I must affirm the commissioner's decision because it is supported by substantial evidence.

ORDER

IT IS ORDERED that Dale Rowe's motion for summary judgment, Dkt. 14, is DENIED. The decision of the Acting Commissioner of Social Security denying Rowe's application for disability benefits and supplemental security income for the period before April 9, 2021, is AFFIRMED. The clerk of court is directed to enter judgment and close this case.

Entered April 25, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

14